CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 23 2021

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## DANVILLE DIVISION

| | | |
|---|---|---|
| DR. EDWIN L. FUENTES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:20-cv-00026 |
| | ) | |
| XAVIER BECERRA, in his official | ) | By: Hon. Michael F. Urbanski |
| capacity as Secretary of the United | ) | Chief United States District Judge |
| States Department of Health and | ) | |
| Human Services,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Dr. Edwin L. Fuentes, a licensed osteopathic physician, was convicted of health care fraud and tax evasion in January 2018. The Secretary of the Department of Health and Human Services (the "Secretary"), acting through the Office of Inspector General, notified Dr. Fuentes shortly thereafter that he would be excluded from participating in federal health care programs for 15 years under 42 U.S.C. § 1320a-7(a). Following an unsuccessful administrative appeal, Dr. Fuentes filed this action seeking judicial review of the Secretary's final decision.

The case is presently before the court on (1) the Secretary's motion for judgment on the pleadings or, in the alternative, for summary judgment; (2) Dr. Fuentes's motion for judgment on the pleadings or, in the alternative, for summary judgment; and (3) Dr. Fuentes's motion to supplement the administrative record or, in the alternative, admit extra-record

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Xavier Becerra, the current Secretary of Health and Human Services, is automatically substituted for his predecessor, Alex Michael Azar II.

evidence. The matter has been fully briefed, and the court heard oral argument on August 30, 2021. For the reasons set forth below, Dr. Fuentes's motions are **DENIED**, the Secretary's motion is **GRANTED**, and the Secretary's final decision is **AFFIRMED**.

## BACKGROUND

### I.    Statutory and Regulatory Background

Section 1128(a) of the Social Security Act requires the Secretary to "exclude . . . individuals and entities from participation in any Federal health care program" if they have been convicted of certain types of criminal offenses. 42 U.S.C. § 1320a-7(a). The Secretary has delegated the responsibility for imposing exclusions to the Office of the Inspector General ("OIG"). 53 Fed. Reg. 12,993 (Apr. 20, 1998). Individuals and entities for whom exclusion is mandatory include the following:

> (1) Conviction of program-related crimes
>
> Any individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under [Medicare] or under any State health care program.
>
> . . . .
>
> (3) Felony conviction relating to health care fraud
>
> Any individual or entity that has been convicted for an offense which occurred after August 21, 1996, under Federal or State law, in connection with the delivery of a health care item or service or with respect to any act or omission in a health care program (other than those specifically described in paragraph (1)) operated by or financed in whole or in part by any Federal, State, or local government agency, of a criminal offense consisting of a felony relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct.

42 U.S.C. § 1320a-7(a)(1), (3).

2

Unless certain exceptions apply, the mandatory exclusion period lasts a minimum of five years. See 42 U.S.C. § 1320a-7(c)(3)(B). Regulations implementing the mandatory exclusion provisions list nine factors that may be considered when increasing an exclusion beyond the five-year mandatory minimum. See 42 C.F.R. § 1001.102(b). The regulations provide that "[a]ny" of the listed factors "may be considered to be aggravating and a basis for lengthening the period of exclusion," including the following factors relevant to this case:

> (1) The acts resulting in the conviction, or similar acts, caused, or were intended to cause, a financial loss to a government agency or program or to one or more other entities of $ 50,000 or more. (The entire amount of financial loss to such government agencies or programs or to other entities, including any amounts resulting from similar acts not adjudicated, will be considered regardless of whether full or partial restitution has been made);

> (2) The acts that resulted in the conviction, or similar acts, were committed over a period of one year or more; [and]

> . . . .

> (5) The sentence imposed by the court included incarceration[.]

Id. If any aggravating factors are found to exist, certain "mitigating factors [may] be considered as a basis for reducing the period of exclusion to no less than 5 years." Id. § 1001.102(c).

If the OIG determines that exclusion is warranted, it sends a written notice to the excluded individual that identifies the basis for the exclusion, the length of the exclusion, and the factors considered in determining the length. Id. § 1001.2002. The excluded individual may request a hearing before an administrative law judge ("ALJ"). Id. § 1005.2(a). The ALJ may "only" consider the following issues: (1) whether "[t]he basis for the imposition of the sanction exists," and (2) whether "[t]he length of exclusion is unreasonable." Id. § 1001.2007(a).

The parties to the proceedings before the ALJ are the petitioner (the excluded individual) and the Inspector General ("IG"). Id. § 1005.2(b). Either party "may make a request to another party for the production of documents for inspection and copying which are relevant and material to the issues before the ALJ." Id. § 1005.7(a). If the request is refused, the requesting party may file a motion for an order compelling discovery. Id. § 1005.7(e). The opponent of the discovery request may, in turn, file a motion for protective order, which an ALJ may grant if the ALJ finds that the requested discovery is irrelevant, unduly costly or burdensome, will unduly delay the proceeding, or seeks privileged information. Id.

An ALJ has the authority to schedule a hearing; examine witnesses; and receive, rule on, and exclude or limit evidence. Id. § 1005.4(b). Either party may choose to "waive appearance at an oral hearing and to submit only documentary evidence (subject to the objection of other parties) and written argument." Id. § 1005.6(b)(5). An ALJ is also authorized to decide a case, "in whole or in part, by summary judgment where there is no disputed issue of material fact." Id. § 1005.4(b)(12).

Either party may appeal the ALJ's initial decision by filing a notice of appeal with the Appellate Division of the Departmental Appeals Board ("DAB"). Id. § 1005.21(a). "Within 60 days after the time for submission of briefs and reply briefs, if permitted, has expired, the DAB will issue to each party to the appeal a copy of the DAB's decision . . . ." Id. § 1005.21(i). In reaching its decision, the DAB applies the following standards of review:

> The standard of review on a disputed issue of fact is whether the initial decision [of the ALJ] is supported by substantial evidence on the whole record. The standard of review on a disputed issue of law is whether the initial decision [of the ALJ] is erroneous.

42 C.F.R. § 1005.21(h).

The DAB's decision "becomes final and binding 60 days after the date on which the DAB serves the parties with a copy of the decision." Id. § 1005.21(j). Within that same timeframe, a party may seek judicial review in federal district court. Id. § 1005.21(k)(1); see also 42 U.S.C. § 1320a-7(f)(1) (providing that "any individual or entity that is excluded (or directed to be excluded) from participation under this section is entitled to . . . judicial review of the Secretary's final decision . . . as is provided in section 405(g) of this title").

## II.     Factual and Procedural Background

### A.     Criminal Proceedings

Dr. Fuentes owned and operated Morning Star Family Medicine ("Morning Star") in Danville, Virginia. Admin. R. ("A.R."), ECF No. 13-1, at 710.[2] From January 2012 through December 2014, Dr. Fuentes "knowingly and willfully directed and ordered Morning Star employees to bill various health care benefit programs through a scheme designed to defraud those programs." Id. In addition to billing health care benefit programs for patient visits under an evaluation and management code, Dr. Fuentes "would bill the health care benefit programs for 'preventative counseling' sessions for the exact same patient visits, which would result, effectively, in a double billing of the health care benefit program for a single patient visit." Id. Dr. Fuentes "attempted to conceal the fraud by marking the progress notes with a stamp that stated that the patient had received some type of counseling, although this counseling had not occurred and this statement in the patient file was false." Id. During the three-year period in

---

[2] The administrative record is Bates-stamped US-000001 to US-000712. Citations to the administrative record omit the "US-" identifier and the leading zeros.

which the fraudulent billing occurred, various health care benefit programs overpaid Dr. Fuentes over $998,000 for services that were not never provided to patients. Id. at 710–11.

On July 18, 2017, Dr. Fuentes pleaded guilty to a two-count information filed in the United States District Court for the Western District of Virginia, which charged him with health care fraud, in violation of 18 U.S.C. § 1347, and tax evasion, in violation of 26 U.S.C. § 7201. Id. at 683–85. On January 9, 2018, Dr. Fuentes was sentenced to a term of imprisonment of 24 months. Id. at 704. As part of his sentence, he was ordered to pay $1,859,963.40 in restitution, of which $243,451.27 was owed to Medicare. Id. at 708.

### B.      Exclusion by the Inspector General

By letter dated April 30, 2018, the OIG notified Dr. Fuentes that he was being excluded from participation in Medicare, Medicaid, and all other federal health care programs "for a minimum period of 15 years." Id. at 679. The letter stated that "[t]his action is being taken under sections 1128(a)(1) and 1128(a)(3) of the Act," as a result of the conviction for health care fraud in the Western District of Virginia. Id. The letter explained that the 15-year period of exclusion was based on the following aggravating factors set forth in 42 C.F.R. § 1001.102(b):

> 1.      The acts resulting in the conviction, or similar acts, caused, or were intended to cause, a financial loss to a government agency or program or to one or more other entities of $ 50,000 or more. (The entire amount of financial loss to such government agencies or programs or to other entities, including any amounts resulting from similar acts not adjudicated, will be considered regardless of whether full or partial restitution has been made.) The court ordered you to pay approximately $1,859,900 in restitution.

2.   The acts that resulted in the conviction, or similar acts, were committed over a period of one year or more. The acts occurred from about May 2012 to about December 2014.

3.   The sentence imposed by the court included incarceration. The court sentenced you to 24 months of incarceration.

Id. at 680.

## C.   ALJ Proceedings

On July 12, 2008, Dr. Fuentes timely requested review of the exclusion decision by an ALJ, and the matter was assigned to ALJ Keith Sickendick. Id. at 43–51. On September 10, 2018, the IG moved for summary judgment. Id. at 86. The IG argued that Dr. Fuentes's exclusion was legally supportable, that the length of the exclusion was reasonable, and that there were no material facts in dispute. Id.

After obtaining new counsel, Dr. Fuentes filed a request for discovery, in which he sought to obtain, among other documents, any "scoresheet" or "chart" used by the IG to determine the length of the exclusion. Id. at 119. Dr. Fuentes also filed a motion requesting full access to the DAB E-file System and "all non-sealed I.G. matters maintained in the database." Id. at 127. On November 21, 2018, the IG moved to strike the discovery requests on the basis that Dr. Fuentes had not shown how any particular document was relevant or material to the issues before the ALJ. Id. at 132–34.

On November 30, 2018, the ALJ denied Dr. Fuentes's motion for access to the E-File System and issued a protective order relieving the IG of any responsibility to produce documents responsive to certain requests for discovery, including Dr. Fuentes's request for any scoresheet or chart utilized by the IG. Id. at 158–166. With respect to that request, the

ALJ explained as follows:

> Request 2: This request is not for the production of evidence relevant and material to the issues I may decide in this case. While the information sought may be related to how the IG decided that exclusion for more than the five-year minimum was appropriate, I do not review how the IG determined the period of exclusion. My review is, as already described, whether there are aggravating and mitigating factors and whether the period imposed by the IG is within the reasonable range.

Id. at 164.

Following the ALJ's ruling, Dr. Fuentes and the IG filed several other discovery-related motions and responses. On May 14, 2019, the ALJ entered an order granting Dr. Fuentes's request for reconsideration of the entry of a protective order, denying his motions to compel, and denying his request for access to records in 29 other cases. Id. at 296–319.

On September 18, 2019, the ALJ granted the IG's motion for summary judgment and upheld the imposition of a 15-year exclusion. Id. at 8–21. The ALJ concluded that there were "no genuine disputes of material fact" and that summary judgment was "appropriate as to both the basis for [Dr. Fuentes's] exclusion and the reasonableness of the 15-year exclusion." Id. at 13. Specifically, because Dr. Fuentes conceded that there was a basis for exclusion under section 1128(a)(1) of the Act, the ALJ found it unnecessary to resolve any dispute over whether Dr. Fuentes was also subject to exclusion under section 1128(a)(3) of the Act. Id. at 12–13. The ALJ similarly concluded that there were no disputes of material fact related to the existence of the three aggravating factors on which the IG relied to impose a 15-year period of exclusion:

> Petitioner does not dispute that he was sentenced to incarceration or that his criminal conduct occurred over a period of one year or more, or that these two aggravating factors established by 42

8

> C.F.R. § 1001.102(b)(2) and (5) were properly considered by the IG. Petitioner also concedes that he was ordered to pay restitution of $243,451.27 . . . . The aggravating factor established by 42 C.F.R. § 1001.102(b)(1), is loss to a government agency of $50,000 or more. The loss of $50,000 or more coupled with the undisputed fact that restitution was ordered to be made to Medicare among others . . . establishes the aggravating factor authorized by 42 C.F.R. § 1001.102(b)(1) exists in this case. Accordingly, I conclude that there is no dispute of material fact related to the existence of the three aggravating factors considered by the IG in this case.

Id. at 13 (citations omitted). The ALJ also noted that Dr. Fuentes had "offered no evidence that would tend to show the existence of any mitigating factor authorized to be considered under 42 C.F.R. § 1001.102(c)." Id. The ALJ ultimately concluded that "a period of exclusion of 15 years is in a reasonable range and not unreasonable considering the existence of three aggravating factors and the absence of any mitigating factors." Id. at 20. Accordingly, the ALJ upheld the decision to exclude Dr. Fuentes from participating in Medicare and all other federal health care programs for a minimum of 15 years. Id. at 21.

### D.    DAB Proceedings

Dr. Fuentes timely appealed the ALJ's decision to the DAB. Id. at 505–09. On appeal, Dr. Fuentes argued that summary judgment was inappropriate because genuine disputes existed as to whether the IG had an alternative basis to exclude him under section 1128(a)(3) of the Act and whether the IG improperly considered the total amount of restitution imposed as part of his federal sentence.[3] Dr. Fuentes further argued that the ALJ erred in concluding that a 15-year period of exclusion was not unreasonable, in denying his requests for discovery

---

[3] Dr. Fuentes argued that the total amount of restitution included tax losses and investigative costs and that the IG should have only considered the applicable losses to federal health care programs.

and for access to the DAB E-File System, and in refusing to allow him to elicit testimony from the IG Reviewing Official who imposed a 15-year period of exclusion. Id. at 509–48.

On February 28, 2020, the DAB issued a final decision affirming the ALJ's decision and sustaining the exclusion as imposed. Id. at 22–42. Because Dr. Fuentes conceded that he was subject to exclusion under section 1128(a)(1) of the Act, the DAB concluded that the ALJ did not err in declining to reach the issue of whether Dr. Fuentes was alternatively subject to exclusion under section 1128(a)(3). Id. at 28. The DAB also found "no error in the ALJ's conclusion that the undisputed facts sufficed to show that the 15-year exclusion period was within a reasonable range." Id. at 32. The DAB emphasized that Dr. Fuentes did not dispute the applicability of all three aggravating factors cited by the IG and that the $243,451.27 restitution amount owed to Medicare, while less than the total amount of financial loss cited by the IG, satisfied the aggravating factor of a loss of more than $50,000 to a government agency or program. Id. at 34.

The DAB also rejected Dr. Fuentes's argument that the ALJ erred in refusing to give him direct access to other cases in the DAB E-File System. Among other grounds, the DAB reasoned that "information about the length of exclusions imposed in unrelated cases is of little assistance" in resolving the issue of whether a 15-year exclusion was reasonable in Dr. Fuentes's case and that Dr. Fuentes "clearly had sufficient information available to him from publicly available final ALJ and Board decisions to make the argument about where his exclusion fell in relation with others." Id. at 39–40. To the extent Dr. Fuentes "sought documents related to the I.G.'s internal decision-making process," such as a scoresheet or chart, the DAB agreed with the ALJ that Dr. Fuentes had "not shown that internal policies or

procedures of the I.G., including a spreadsheet if such exists, would be relevant or material" to the issues before the ALJ. Id. at 40–41. The DAB also found "no error in the ALJ proceeding to summary judgment without providing [Dr. Fuentes] an opportunity to question the I.G. Reviewing Official who decided on the length of his exclusion." Id. at 41. The DAB determined that "[s]uch testimony could not affect the ALJ's review of the issue of whether the length was reasonable." Id. The DAB's decision constitutes the "final decision" of the Secretary. Id. at 22; see also 42 U.S.C. § 1005.21(j).

### E.   Mandamus Proceedings

On July 1, 2019, while his appeal was still pending before the ALJ, Dr. Fuentes filed a complaint for mandamus relief in the United States District Court for the District of Columbia. See Fuentes v. Azar, 468 F. Supp. 3d 83 (D.D.C. 2020). Dr. Fuentes sought a writ of mandamus requiring the named defendants to provide him access to the DAB E-File System. Id. at 88. On June 17, 2020, the district court granted the defendants' motion to dismiss. Id. at 86. Among other rulings, the district court held that Dr. Fuentes had not met his burden of showing that he had a regulatory or constitutional right to access the records at issue. Id. at 90–91.

### F.   The Instant Action

On May 4, 2020, Dr. Fuentes filed this action seeking judicial review of the Secretary's final decision.[4] See Compl., ECF No. 1. In Count I of the complaint, Dr. Fuentes contends that the decision should be reversed under 42 U.S.C. § 1320a-7(f) on the grounds that the 15-

---

[4] The case was originally assigned to Senior United States District Judge Glen E. Conrad. It was transferred to the undersigned on May 5, 2021.

year exclusion is "unreasonable, not supported by substantial evidence, legally erroneous, and contrary to law." Id. at ¶ 51. In Count II, Dr. Fuentes claims that the decision should be set aside under the Administrative Procedure Act ("APA") "[b]ecause the Secretary acted arbitrary and capriciously." Id. at ¶ 71. In Count III, Dr. Fuentes claims that he was denied due process in violation of the Fifth Amendment. Id. at ¶¶ 73–83.

Both parties have moved for judgment on the pleadings or, in the alternative, for summary judgment. Dr. Fuentes has also filed a motion to supplement the administrative record or, in the alternative, admit extra-record evidence. The motions have been briefed and argued and are ripe for decision.

## STANDARDS OF REVIEW

### I.      Summary Judgment

Under the Federal Rules of Civil Procedure, the court must treat a motion for judgment on the pleadings as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). In support of their dispositive motions, both parties rely on the administrative record that was submitted as an exhibit to the Secretary's motion. Because the court will consider the administrative record, summary judgment is the proper mechanism for resolving the parties' dispositive motions. See Garner v. Astrue, 436 F. App'x 224, 225 (4th Cir. 2011) ("The district court granted Garner's motion for judgment on the pleadings . . . . Because the court considered the administrative record, we review the district court's order as the grant of summary judgment.") (citing Fed. R. Civ. P. 12(d)).

Under Rule 56(a), the court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is material depends on the relevant substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion, "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted).

## II.     Judicial Review of Administrative Decisions

The court has jurisdiction to review the Secretary's final decision under 42 U.S.C. § 1320a-7(f)(1), which incorporates the review provisions of 42 U.S.C. § 405(g). See 42 U.S.C. § 1320a-7(f)(1) (providing that "any individual who is excluded . . . from participation under this section is entitled to . . . judicial review of the Secretary's final decision as is provided in 42 U.S.C. § 405(g)"). Under § 405(g), judicial review "is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also 42 U.S.C. § 405(g). In reviewing for substantial evidence, the court considers whether the administrative record contains sufficient evidence to support the Secretary's factual determinations. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not

high. Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

The parties dispute whether § 405(g) provides the exclusive avenue for judicial review of the Secretary's final decision or whether the decision is also subject to review under the arbitrary and capricious standard of the APA. Dr. Fuentes cites no binding authority that mandates the application of the APA in this case. Nonetheless, because the standard of review is not determinative here, the court will assume, without deciding, that the APA's arbitrary and capricious standard applies. See, e.g., Shah v. Azar, 920 F.3d 987, 991 (5th Cir. 2019) (assuming for the sake of argument that the APA provides the applicable standard of review); Begum v. Hargan, No. 1:16-cv-09624, 2017 U.S. Dist. LEXIS 193281, at *9 n.5 (N.D. Ill. Nov. 21, 2017) (affirming the Secretary's decision under § 405(g) and noting that "the Court also finds that the decision should stand under the APA"). Under the APA, a reviewing court shall "set aside an agency action found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009). "In determining whether agency action was arbitrary or capricious, the court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made." Id. The "focal point for judicial review should be the administrative record already in existence," Camp v. Pitts, 411 U.S. 138, 141 (1973), and the court may not "substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983). As long

as the agency has "provided an explanation of its decision that includes 'a rational connection between the facts found and the choice made,'" the agency's decision is entitled to deference. Ohio Valley Envtl. Coal., 556 F.3d at 192 (quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43).

## DISCUSSION

### I.   Dr. Fuentes's Motion to Supplement the Administrative Record

Before turning to the parties' dispositive motions, the court will first address Dr. Fuentes's motion to supplement the administrative record or admit extra-record evidence. Dr. Fuentes specifically seeks to supplement the record to include an "exclusion scoresheet" that his counsel obtained in response to a request under the Freedom of Information Act ("FOIA"). Pl.'s Mot. to Suppl., ECF No. 30, at 1. On August 27, 2018, counsel submitted a FOIA request for a copy of the scoresheet "produced by the Inspector General in discovery to Baldwin Ihenacho in the exclusion matter captioned Ihenacho v. I.G. (O.I. File No. H-12-40729-9), Docket No. C-14-1627 DAB CR4002." Ex. A to Pl.'s Mot. to Suppl., ECF No. 30-1. Counsel received a copy of the scoresheet on May 28, 2021, after Dr. Fuentes and the Secretary completed briefing on their dispositive motions but before they appeared for oral argument. See Pl.'s Mot. to Suppl. at 3. Dr. Fuentes contends that the scoresheet supports his position that the IG uses a formula to determine the length of the exclusion to be imposed in a particular case. Id. at 3–4. Dr. Fuentes further argues that "[t]he scoresheet establishes that a reasonable term of exclusion based on the demonstrated criteria is between five and ten years." Id. at 7.

After considering the parties' arguments, the court concludes that Dr. Fuentes's motion must be denied. As Dr. Fuentes acknowledges in his complaint, the court is not tasked with

reviewing the initial decision by the IG. Instead, Dr. Fuentes is only "entitled to . . . judicial review of the Secretary's final decision." 42 U.S.C. § 1320a-7(f)(1); see also Compl. at ¶ 6 ("Plaintiff seeks review of . . . the Secretary's final decision."). In the final decision, the DAB concluded that the ALJ did not err in refusing to compel the production of "documents related to the I.G.'s internal decision-making process," including any "scoresheet, chart, or spreadsheet." A.R. at 40 (internal quotation marks omitted). Although Dr. Fuentes argued on appeal that "such a spreadsheet was produced in discovery in . . . Baldwin Ihenacho, DAB CR4002," the DAB noted that "[t]he ALJ in Ihenacho ruled that the chart had no relevance to his review of the exclusion period because 'the specific internal method the IG may have used to determine the length of exclusion in his case is not subject to review.'" A.R. at 40 (quoting Baldwin Ihenacho, DAB CR4002 at 13). The ALJ "reached a similar conclusion" in Dr. Fuentes's case, id., and the DAB agreed with the ALJ that the IG's internal processes or methods are not subject to review by the ALJ:

> Even if the I.G. developed some internal formula for weighing the regulatory factors in setting the period to impose, that would not make the I.G.'s internal process subject to ALJ review or relevant and material to the ALJ's determination of whether the resulting period, based on the facts in the ALJ record, was unreasonable.

> We find no error in the ALJ's statement of the scope of the issues before him and agree that [Dr. Fuentes] has not shown that internal policies or procedures of the I.G., including a spreadsheet if such exists, would be relevant or material to any of those issues.

Id. at 41.

Against this backdrop, the court finds no basis to supplement the administrative record to include the scoresheet produced in the Ihenacho case or to consider the scoresheet as extra-

16

record evidence. Dr. Fuentes's arguments pertaining to the IG's decision-making process, including the alleged use of a scoresheet in his case and the Ihenacho case, were fully addressed in the Secretary's final decision. This is simply not a case in which the existing record "does not reveal the agency's reasoning," Save Our Sound OBX, Inc. v. N.C. DOT, 914 F.3d 213, 226 (4th Cir. 2019), or is otherwise "insufficient to permit meaningful review," Axiom Res. Mgmt. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009). Nor has Dr. Fuentes "met his burden of making a 'strong showing of bad faith' actions by the Secretary sufficient to justify supplementation of the record." Bailey v. Azar, No. 6:20-cv-00166, 2021 U.S. Dist. LEXIS 171276, at *12–13 (E.D. Ky. Aug. 6, 2021) (quoting Sierra Club v. Slater, 120 F.3d 623, 638 (6th Cir. 1997)); see also Mayor of Baltimore v. Trump, 429 F. Supp. 3d 128, 138 (D. Md. 2019) (emphasizing that "a plaintiff must put forth a 'strong showing' of impropriety to peer beyond the [administrative] record") (quoting Dep't of Commerce v. New York, 139 S. Ct. 2551, 2574 2019)). Accordingly, Dr. Fuentes's motion to supplement the record or admit extra-record evidence is denied.[5]

## II.   The Parties' Motions for Summary Judgment

Both parties have moved for summary judgment on all three counts of the complaint. The court will address each count in turn.

### A.   Count I

In Count I, Dr. Fuentes contends that the Secretary's final decision should be reversed under 42 U.S.C. § 1320a-7(f), which incorporates the standard of judicial review found in 42

---

[5] The court notes that even if it were to allow supplementation of the record, the document at issue would not alter the court's decision on the parties' motions for summary judgment.

U.S.C. § 405(g). As indicated above, the court's review under § 405(g) is limited to two questions: whether substantial evidence supports the Secretary's final decision and whether the Secretary applied the correct legal standards. The court concludes that both questions must be answered in the affirmative.

Although Dr. Fuentes challenges many aspects of the Secretary's final decision, the court begins by noting what is not in dispute. Dr. Fuentes does not dispute that the Secretary was required to impose an exclusion of at least five years under section 1128(a)(1) of the Act as a result of his conviction for health care fraud. See 42 U.S.C. § 1320a-7(a)(1). Dr. Fuentes also does not dispute that three aggravating factors exist in his case, "[a]ny" one of which may serve as "a basis for lengthening the period of exclusion": (1) that the acts resulting in his conviction for health care fraud caused "a financial loss to a government agency or program or to one or more other entities of $50,000 or more"; (2) that the acts that resulted in the conviction were "committed over a period of one year or more"; and (3) that his criminal sentence "included incarceration." 42 C.F.R. § 1001.102(b). It is further undisputed that there are no mitigating factors in Dr. Fuentes's case that would warrant reducing the period of exclusion. Instead, Dr. Fuentes primarily challenges the weight given to the first aggravating factor, particularly in light of the lower amount of loss considered by the ALJ and the DAB— the $243,451.27 loss to Medicare as opposed to the total amount of restitution cited in the exclusion notice from the OIG. Dr. Fuentes further argues that the ALJ erred in denying his requests for discovery, in refusing to grant him access to the DAB E-File System, in precluding him from taking the testimony of witnesses, and in deciding the case on summary judgment.

Many of Dr. Fuentes's arguments share a common premise—that the ALJ should have evaluated the IG's internal methodology or decision-making process and allowed Dr. Fuentes to discover how the IG weighed the aggravating factors and decided to impose a 15-year exclusion in his case. Dr. Fuentes's position on this point was analyzed and rejected by the DAB, and the court finds no error in its decision.

The applicable regulations expressly state that an ALJ may "only" consider two issues: whether a "basis for the imposition of the sanction exists" and whether the "length of exclusion is unreasonable." 42 C.F.R. § 1001.2007(a)(1). The DAB has interpreted § 1001.2007(a)(1) to significantly limit the scope of review, particularly with respect to the period of exclusion imposed by the IG:

> It is well-settled in our cases (to date in the context of whether an imposed exclusion was unreasonably long) that in determining whether the I.G.'s proposed period of exclusion is unreasonable, an ALJ's—and the [DAB's]—role is limited to considering whether the period of exclusion the I.G. imposed was within a reasonable range, based on demonstrated criteria. In determining whether a period of exclusion is within a reasonable range, the ALJ may not substitute his judgment for that of the IG or determine what period of exclusion would be better.

Raymond Lamont Shoemaker, DAB No. 2560, 2014 HHSDAB LEXIS 323, at *16 (Mar. 15, 2014) (internal quotation marks and citations omitted). Instead, "the ALJ's role is to evaluate whether the exclusion falls within a reasonable range, given the aggravating and mitigating factors and the circumstances underlying them." Kimberly Jones, DAB No. 3033, 2021 HHSDAB LEXIS 16, at *11 (Mar. 4, 2021) (internal quotation marks and citation omitted). "As long as the period of exclusion is 'within a reasonable range,' the ALJ has no authority to

change it." Begum, 2017 U.S. Dist. LEXIS 193281, at *24 (citing 57 Fed. Reg. 3,298, 3,321 (Jan. 29, 1992)).

Consistent with these decisions, the DAB found "no error in the ALJ's statement of the scope of the issues before him" and agreed that the IG's internal decision-making process is not "relevant or material to any of those issues." A.R. at 41. The DAB explained that "the ALJ does not conduct an appellate-type inquiry into how the I.G. arrived at the particular length but determines whether the evidence presented before the ALJ by the I.G. and Appellant shows that that length is unreasonable." Id. at 30 (emphasis added). The DAB emphasized that the ALJ's role is defined by 42 C.F.R. § 1001.2007(a)(1) and that the regulation does not authorize or require the ALJ to evaluate the IG's internal decision-making process:

> [T]he regulation expressly constrains the ALJ's actions to determining whether the product of the I.G.'s process is unreasonable. The regulation does not authorize the ALJ to evaluate the process that led to the I.G.'s determination to impose that period.
>
> The same regulatory standards govern our review of the ALJ Decision. In short, we do not review the thinking process of I.G. officials in setting an exclusion period. We review whether the outcome of that process (the exclusion period set by the I.G. and affirmed by the ALJ) is unreasonable in light of the facts relating to the factors that the regulation specifies.

Id. at 32.

Having considered the parties' arguments, the court concludes that the DAB's interpretation of § 1001.2007(a)(1) is not inconsistent with the regulation or otherwise contrary to law. Rather than conducting a de novo review of the thought process behind the IG's decision, the ALJ properly limited his review to whether there is a "basis for exclusion" and

whether the "<u>length</u> of exclusion [imposed by the IG] is reasonable." 42 C.F.R. § 1001.2007(a) (emphasis added). Accordingly, the DAB did not err in determining that the ALJ applied the correct standard of review.

The court likewise concludes that the DAB did not err in upholding the imposition of a 15-year exclusion based on the undisputed evidence before the ALJ. The ALJ found that "[t]he undisputed evidence establishes the three aggravating factors the IG relied on to impose the 15-year exclusion." A.R. at 20. With respect to the first aggravating factor—responsibility for a financial loss to a government program or other entity of $50,000 or more—the ALJ emphasized that "[t]he amount of restitution [Dr. Fuentes] concedes he was ordered to pay to Medicare is 4.87 times the amount necessary for the aggravating factor to exist" and that "[i]t is well established that an amount ordered as restitution constitutes proof of the amount of financial loss to a government program." <u>Id.</u> at 16. Thus, "[c]onsidering only the amount of restitution [Dr. Fuentes] concedes he was ordered to pay to Medicare," the ALJ determined that "the aggravating factor authorized by 42 C.F.R. § 1001.102(b)(1) clearly exists in this case." <u>Id.</u> Since Dr. Fuentes did not dispute the existence of two other aggravating factors or present any evidence of mitigating factors, the ALJ concluded that the 15-year exclusion is not unreasonable. <u>See</u> <u>id.</u> at 20 ("I conclude that a period of exclusion of 15 years is in a reasonable range and not unreasonable considering the existence of three aggravating factors and the absence of any mitigating factors. No basis exists for me to reassess the period of exclusion.").

In its final decision upholding the 15-year exclusion, the DAB similarly relied "only on the admitted loss to Medicare" in weighing the applicable aggravating factors. <u>Id.</u> at 34. The DAB reasoned that the $243,451.27 loss to Medicare "deserves some significant weight in

extending the mandatory exclusion period given that the regulations reflect that losses of even one dollar over $50,000 would justify at least some extension." Id. Since Dr. Fuentes also did "not deny that his criminal activity lasted 31 months, considerably longer than the 12-month threshold for the aggravating factor at section 1001.102(b)(2), or "that he was sentenced to 24 months of incarceration, a substantial term to be considered under section 1001.102(b)(5)," the DAB found "no error in the ALJ's conclusion that the undisputed facts sufficed to show that the 15-year exclusion period was within a reasonable range." A.R. at 33.

Having reviewed the record, the court has no difficulty concluding that the Secretary's final decision is supported by substantial evidence. This conclusion is compelled by the undisputed fact that there are three aggravating factors in Dr. Fuentes's case and no mitigating factors. The fact that the IG may have used a different measure of financial loss in evaluating one of the aggravating factors is simply of no moment, since the amount of loss considered by the ALJ and the DAB, which Dr. Fuentes does not dispute, exceeds the level for an enhanced sentence. In essence, for purposes of judicial review, it does matter whether the IG used a scoresheet to determine the length of the exclusion or whether the scoresheet could have been applied differently. All that matters is whether there is substantial evidence to support the conclusion that a 15-year exclusion is not unreasonable. The presence of three aggravating factors in Dr. Fuentes's case, combined with the absence of any mitigating factors, plainly satisfies this requirement. See Anderson v. Thompson, 311 F. Supp. 2d 1121, 1130 (D. Kan. 2004) (noting that "[i]f any one aggravating factor justifies an exclusion of longer than five years, then the presence of three aggravating factors surely justifies a longer exclusion").

Accordingly, the Secretary's final decision is supported by substantial evidence, as required by § 405(g).

The court also finds no error of law in the ALJ's rulings on discovery and evidentiary matters, or in his decision to resolve the issues before him on summary judgment.[6] As indicated above, "[t]he ALJ's scope of review was limited to whether there was a basis for exclusion and whether the length of the exclusion was unreasonable," Bickelhaupt v. Sebelius, No. 1:12-cv-09598, 2014 U.S. Dist. LEXIS 72878, at *5 (N.D. Ill. May 29, 2014), and the "[t]he parties' rights encompassing evidence, witnesses, and presentation of proof exist within and relative to this abridged scope." Bailey, 2021 U.S. Dist. LEXIS 171276, at *21. The ALJ adequately explained his reasons for declining to grant Dr. Fuentes direct access to the DAB E-File System and for denying his requests to discover and present evidence regarding the IG's internal decision-making process. The DAB approved the ALJ's handling of the discovery and evidentiary issues, and the court is satisfied that no legal error occurred.

The same is true for the ALJ's decision to decide the case on summary judgment. As the district court recently observed in Bailey, "the ALJ is not required to have an in-person or live hearing" before ruling on the issues before him. Id. Instead, the regulations expressly permit an ALJ to decide a case, "in whole or in part, by summary judgment where there is no disputed issue of material fact." 42 C.F.R. § 1005.4(b)(12). In affirming the ALJ's decision, the DAB held that there were no material facts in dispute that would preclude summary judgment, that exclusion was required as a matter of law under section 1128(a)(1) of the Act, and that summary judgment was appropriate as to the length of the exclusion based on the undisputed

---

[6] For the reasons set forth below, the court also finds no violation of Dr. Fuentes's right to due process.

evidence in the record. <u>See</u> A.R. at 27–28. The court finds no error in the DAB's reasoning and analysis. In the absence of any disputed issues of material fact, "the DAB correctly interpreted its regulations as not requiring [an evidentiary] hearing." <u>Big Bend Hosp. Corp. v. Thompson</u>, 88 F. App'x 4, 7 (5th Cir. 2004); <u>see also</u> <u>id.</u> at n. 4 (noting that its "sister circuits have also held that an agency's appellate process may either deny a hearing request or grant summary judgment to the agency when the appellant cannot demonstrate, by relevant evidence, the existence of a genuine issue of material fact to be resolved during the hearing") (citing <u>J.D. v. Pawlet Sch. Dist.</u>, 224 F.3d 60, 68-69 (2d Cir. 2000); <u>Puerto Rico Aqueduct & Sewer Auth. v. EPA</u>, 35 F.3d 600, 606 (1st Cir. 1994); <u>Travers v. Shalala</u>, 20 F.3d 993, 998 (9th Cir. 1994); <u>Veg-Mix, Inc. v. U.S. Dep't of Agric.</u>, 832 F.2d 601, 607 (D.C. Cir. 1987)).[7]

---

[7] In arguing to the contrary, Dr. Fuentes principally relies on <u>Schreibstein v. IG</u>, CR No. 517, 1998 HHSDAB LEXIS 100 (Feb. 26, 1998), in which an ALJ modified an exclusion after conducting an evidentiary hearing. The ALJ reasoned that 42 C.F.R. § 1001.2007(a)(1) "does not state that the administrative law judge should hold anything less than a full, de novo hearing to receive evidence to weigh the reasonableness of the I.G.'s exclusion decision." 1998 HHSDAB LEXIS 100, at *29. The ALJ also noted that the regulation does not "suggest that the administrative law judge lacks the authority to decide independently what is a reasonable exclusion." <u>Id.</u> The court finds the reasoning of <u>Schreibstein</u> unpersuasive in light of more recent DAB decisions interpreting and applying 42 C.F.R. §§ 1001.2007(a)(1) and 1005.4(b)(12). For instance, in the case of <u>Zahid Imran, M.D.</u>, the DAB emphasized that "the ALJ's role is limited to considering whether the period of exclusion imposed by the I.G. was within a reasonable range, based on demonstrated criteria," and that "an exclusion's time period should only be altered if it falls outside of a reasonable range of exclusions which could be imposed." DAB No. 2680, 2016 HHSDAB LEXIS 346, at *2, 23–24 (Mar. 11, 2016) (citations omitted). Since the petitioner did not "dispute the presence of aggravating factors or the absence of mitigating factors," the DAB concluded that substantial evidence supported the ALJ's decision to uphold the exclusion imposed in the petitioner's case and that the ALJ did not err in declining to hold an in-person hearing. <u>Id.</u> at *20–21; <u>see also</u> Timothy Wayne Hensley, DAB No. 2044, 2006 HHSDAB LEXIS 162, at *2–3 (Sept. 14, 2006) (explaining that a hearing is not required if there are no disputed issues of material fact) (citations omitted). To the extent <u>Schreibstein</u> suggests that an ALJ is required to conduct a full evidentiary hearing in every exclusion case, the opinion conflicts not only with subsequent DAB decisions, but also with decisions from a number of federal courts, including those cited herein, which hold that an evidentiary hearing is not required when there are no disputed issues of material fact.

For all of these reasons, the Secretary's final decision is not subject to reversal under § 405(g), and the Secretary is therefore entitled to summary judgment on Count I of the complaint.

### B.    Count II

In Count II, Dr. Fuentes claims that the Secretary's final decision should be set aside as arbitrary and capricious in violation of the APA. For the same reasons set forth above, however, the court disagrees. In the final decision, the DAB provided a reasoned explanation for rejecting each of Dr. Fuentes's arguments and upholding the imposition of a 15-year exclusion. The DAB, like the ALJ, properly limited its consideration to the undisputed facts relating to the aggravating factors, and its decision "includes a rational connection between the [undisputed facts] and the choice made," Ohio Envtl. Coal., 556 F.3d at 192–93 (internal quotation marks and citation omitted):

> The purpose of an exclusion, as we have said, is not to punish the wrongdoer but to protect the programs and their beneficiaries from untrustworthy providers. Appellant's criminal activity, laid out in more detail in the ALJ Decision, demonstrates a serious threat to the integrity of federal funds that calls for a commensurately extended time period before considering renewed federal trust. Fifteen years is not an unreasonable period of exclusion considering the full circumstances presented by Appellant's years of criminal acts, the resulting losses to Medicare alone, and the court's determination to incarcerate him for [2] years.

A.R. at 36; see also id. at 33–34 (discussing each of the applicable aggravating factors and the relevant undisputed facts). While Dr. Fuentes obviously disagrees with the final decision, he has not identified any "clear error of judgment" that would render the decision arbitrary and

capricious. <u>Ohio Envtl. Coal.</u>, 556 F.3d at 192. Accordingly, the Secretary is entitled to summary judgment on Count II of the complaint.

### C.   Count III

In Count III, Dr. Fuentes claims that he was denied procedural due process in violation of the Fifth Amendment. To establish a violation of procedural due process, the plaintiff "must show that (1) [he] had property or a property interest (2) of which the defendant deprived [him] (3) without due process of law." <u>Sunrise Corp. v. City of Myrtle Beach</u>, 420 F.3d 322, 328 (4th Cir. 2007). Under existing Fourth Circuit precedent, Dr. Fuentes's "expectation of continued participation" in the Medicare program is a property interest protected by the Due Process Clause of the Fifth Amendment. <u>Ram v. Heckler</u>, 792 F.2d 444, 447 (4th Cir. 1986).[8] For the following reasons, however, the court concludes that the undisputed facts do not establish any violation of Dr. Fuentes's right to due process.

It is well-settled that "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted). The Supreme Court has acknowledged that "what constitutes being heard at 'a meaningful time and in a meaningful manner' will have different meanings in different circumstances.'" <u>Rusu v. INS</u>, 296 F.3d 316, 321 (4th Cir. 2002) (quoting <u>Mathews</u>, 424 U.S. at 334). "For example, the 'hearing' required by the Due Process Clause need not be 'an adversarial hearing, a full evidentiary, or a formal

---

[8] The Secretary correctly notes that other appellate courts have held that "participation in the federal Medicare reimbursement program is not a property interest" entitled to protection under the Fifth Amendment. <u>Shah v. Azar</u>, 920 F.3d 987, 998 (5th Cir. 2019); <u>see also</u> <u>id.</u> at n.30 (noting that "[a]lthough the Fourth Circuit has reached a contrary conclusion, . . . four circuits have explicitly rejected that conclusion) (citations omitted). Nonetheless, <u>Ram v. Heckler</u> remains binding precedent in the Fourth Circuit.

hearing.'" D.B. v. Cardall, 826 F.3d 721, 743 (4th Cir. 2016) (quoting Buckingham v. Sec'y of U.S. Dep't of Ag., 603 F.3d 1073, 1082 (9th Cir. 2010)). Instead, "due process only 'calls for such procedural protections as the particular situation demands.'" Rusu, 296 F.3d at 321 (quoting Mathews, 424 U.S. at 334).

Dr. Fuentes's due process claim rests on three primary arguments. First, he contends that the ALJ violated his right to due process by denying his request for an in-person hearing and deciding the case on summary judgment. As other courts have recognized, however, "it is well-established that an ALJ is empowered to decide a case on a motion for summary judgment without an evidentiary hearing." Shah, 920 F.3d at 996; see also Puerto Rico Aqueduct & Sewer Auth. v. United States EPA, 35 F.3d 600, 606 (1st Cir. 1994) ("Administrative summary judgment is not only widely accepted, but also intrinsically valid."). Here, both the ALJ and the DAB concluded that there were no disputed issues of material fact that would preclude summary judgment on either issue before the ALJ. The court finds no error in the decision to grant summary judgment based on the undisputed facts in the record. Accordingly, the ALJ did not violate Dr. Fuentes's right to due process by declining to hold an in-person hearing. See Pennsylvania v. Riley, 84 F.3d 125, 130 (3d Cir. 1996) ("An administrative agency need not provide an evidentiary hearing when there are no disputed material issues of fact."); Travers v. Shalala, 20 F.3d 993, 998 (9th Cir. 1994) ("Since there were not disputed issues of material fact, a plenary, adversary administrative proceeding involving evidence, cross-examination of witnesses, etc. [was] not obligatory . . . .") (internal quotation marks and citation omitted); Puerto Rico Aqueduct & Sewer Auth., 35 F.3d at 606 ("Due process simply does

not require an agency to convene an evidentiary hearing when it appears conclusively from the papers that, on the available evidence, the case only can be decided one way.").

Dr. Fuentes's second argument—that the ALJ violated his right to due process by denying his discovery requests—fares no better. Although discovery is permitted under the governing regulations, the right to discovery is not unlimited. The regulations provide that a party may request documents "which are relevant and material to the issues before the ALJ" and that "[t]he burden of showing that discovery should be allowed is on the party seeking discovery." 42 U.S.C. § 1005.7(a), (e)(4). As discussed above, the ALJ concluded that Dr. Fuentes did not meet his burden of showing that his requests were for items that were relevant and material to the issues before the ALJ, and the DAB affirmed the ALJ's decision. Dr. Fuentes has not shown that the ALJ erred in ruling on his discovery requests or that the DAB erred in rejecting his arguments on appeal. Therefore, the denial of the discovery requests did not violate his right to due process. See, e.g., Banister v. United States Dep't of the Treasury, 499 F. App'x 668, 671 (9th Cir. 2012) ("In light of Banister's admissions, there were no material facts in dispute, and the legal conclusions were apparent based on the settled facts. Summary judgment was thus wholly appropriate, and no evidentiary hearing was needed. With the material facts settled, the ALJ did not err [or violate Banister's due process rights] by refusing to grant extraneous requests for discovery, witness testimony, or cross-examination."); Bailey, 2021 U.S. Dist. LEXIS 171276, at * 23 ("The ALJ surveyed the scope of the matter before her and knifed through what could have been a dilatory and far-afield discovery overture. As the DAB found, the ALJ acted appropriately.").

In his final argument, Dr. Fuentes contends that the ALJ violated his right to due process by denying his request to access records from other cases in the DAB E-File System. See Pl.'s Br. Supp. M. Summ. J., ECF No. 16, at 35 (emphasizing that "Plaintiff requested access to the DAB E-File System to examine all final ALJ exclusion decisions, docket information, case pleadings, and pre-hearing orders related to discovery, evidentiary rulings, and hearing procedures"). As was true in the mandamus proceedings, Dr. Fuentes does not cite any authority that would require an ALJ to grant a party unfettered access to records from other cases. See Fuentes, 468 F. Supp. 3d at 91 (holding that Dr. Fuentes had not "met his burden of showing that the Due Process Clause clearly required Defendants to grant him unqualified, free access to the E-File Database and all records in exclusion and civil monetary penalty appeals before the [DAB]"). It is clear from the record that Dr. Fuentes had access to administrative decisions[9] at the time he filed his briefs with the ALJ and the DAB, and the DAB found "no reason that [Dr. Fuentes] would require a fishing expedition into the briefs and exhibits filed in all other cases" to address the relevant issues on review. (A.R. at 40.) The court agrees with the Secretary that the refusal to grant unfettered access to the DAB E-File System did not violate Dr. Fuentes's right to due process.

In sum, the court concludes that Dr. Fuentes received "the opportunity to be heard at a meaningful time and in a meaningful manner," Mathews, 424 U.S. at 333, and that none of the challenged decisions deprived him of due process. Accordingly, the Secretary is entitled to summary judgment on Count III of the complaint.

---

[9] In briefs filed before the ALJ and DAB, Dr. Fuentes cited to a number of administrative decisions, which are publicly available on Lexis, Westlaw and the HHS website. See, e.g., A.R, ECF No. 13-1, at 529. See also https://www.hhs.gov/about/agencies/dab/decisions/alj-decisions/index.html.

## CONCLUSION

For these reasons, Dr. Fuentes's motion to supplement the record or, in the alternative, admit extra-record evidence, ECF No. 30, is **DENIED**; Dr. Fuentes's motion for judgment on the pleadings or, in the alternative, for summary judgment, ECF No. 17, is **DENIED**; the Secretary's motion for judgment on the pleadings or, in the alternative, for summary judgment, ECF No. 12, is **GRANTED**; and the Secretary's final decision is **AFFIRMED**. An appropriate Order will be entered.

Entered: September 23, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.09.23 11:44:36
-04'00'

Michael F. Urbanski
Chief United States District Judge